**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**STACIE LAVIANO, as personal representative of the Estate of Trey Allyn Cornwell, and on behalf of the estate and survivors,**
Plaintiffs,
**v.** **CASE NO.: 3:26-CV-03970**

**CENTURION OF FLORIDA, LLC., et al.**
Defendants.
_______________________________________/

**DEFENDANTS BOATWRIGHT, MONROE AND TRAINER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, **VALERIE BOATWRIGHT, HAILEY LYNN-MARIE MONROE, AND TIMOTHY MICHAEL TRAINER,** ("Defendants") by and through the undersigned counsel, hereby respectfully move this Honorable Court to dismiss Plaintiff's Complaint (Doc. 1) pursuant to 12(b), Fed. R. Civ. P. for failure to state a claim, and because Defendants are entitled to qualified immunity. In support thereof, Defendants state the following:

## I. BACKGROUND AND ALLEGATIONS

### PROCEDURAL BACKGROUND

1. Plaintiff brings this action alleging claims for "deliberate indifference to a strong likelihood of self harm" and "failure to treat."[1] Doc. 1, pp. 21, 23.

[1] Additionally, Plaintiff raises claims against defendants Centurion of Florida, LLC., Jeremy Shiver, Kristina Tichenor, Rebecca Price, Sheila Melvin, Daniel Winfree, Deone M. Johnson,

2. On May 29, 2026, Plaintiff Stacie Laviano, as both personal representative for the Estate of Trey Allyn Cornwell, and as a survivor, filed the instant four-count complaint. (Doc. 1).
3. The Complaint was served on Defendants, Hailey Lynn-Marie Monroe (June 4, 2026), Timothy Michael Trainer (June 11, 2026) and Valerie Boatwright (June 11, 2026).

PLAINTIFF'S ALLEGATIONS AS THEY RELATE TO DEFENDANTS BOATWRIGHT, MONROE, AND TRAINER

4. Plaintiff claims the Decedent suffered from a serious risk of self-harm with severe mental health issues, including self-abuse and harm, suicidal ideations and behaviors. Id., pp. 8-10.
5. Plaintiff further alleges that on multiple occasions leading up to his death, the Decedent made attempts to commit serious self-harm and disfigurement including but not limited to smuggling in Visine (alleged to be a lethal substance), attempting castration, and attempting suicide, among others. Id.
6. On January 24, 2024, the Decedent, in an attempt at self-harm, inflicted wounds upon Decedent's forearms and scrotum which began to bleed out requiring him to receive sutures and be transported to Santa Rosa Medical

Steve Jones for deliberate indifference, failure to treat and Monell liability; however, these named defendants are represented by Mr. Ethan Shapiro and Ms. Rachel Eilers.

Center ("SRMC"). (Id., p. 10-12).

7. On January 27, 2024, after being released from SRMC, the Decedent arrived back at Santa Rosa CI and was directed to be returned to a confinement cell in the Q dormitory for observation with scheduled fifteen-minute safety and security checks. Id., p. 12-13.

8. Sometime before 1pm the Decedent committed self-harm and when Defendant Boatwright arrived at the cell to perform the safety check, she noted blood in the cell and radioed for help from additional officers. Id., p. 13.

9. Defendant Monroe responded and she and Boatwright observed the Decedent's eyes open but there was no response to their calls, prompting them to call for additional assistance, to which Defendant Trainer and a second officer, Graham, responded and transported the Decedent to medical. Id., pp. 13-14.

10. Plaintiff alleges that while in medical the Decedent indicated a desire to continue self-harming behavior when returned to the confinement cell and said statement was heard by the medical staff as well as Defendant Trainer. Id., p. 14, ¶ 58.

11. Once medical discharged the Decedent, Defendant Trainer and Graham resumed their transport of the Decedent back to a confinement cell. Id., p. 14.

12. During a subsequent security check, Defendant Boatwright came upon the cell

and observed the Decedent facing away, and the presence of blood. She inquired as to what was happening, and the Decedent then proceeded to state "what do you think I'm doing" while reopening the arm wound that was previously treated. Id., p. 15, ¶ 64.

13. Defendant Boatwright radioed for assistance again to which Defendant Monroe responded alongside a nurse, who directed Defendant Trainer and officer Graham to transport the Decedent back to medical. Id., p. 15, ¶¶65-66.

14. Once the Decedent was discharged from medical and returned to a confinement cell, Defendant Monroe and others remained at the front of the cell. Defendants Monroe and Trainer worked with the Decedent for about an hour to get the Decedent to return the restraints. Id., p. 16, ¶69.

15. Around approximately 3:30 p.m. an orderly observed the Decedent had self-harmed again, and informed Defendant Monroe who reported to the Decedent's cell, banged on the door but did not get a response so she radioed for additional units. Id., p. 16, ¶71-72.

16. At this time, Lieutenant Bradley and Officer Sheldon arrived and transported the Decedent to medical. Id., pp. 16-17, ¶¶ 73, 77.

17. While in medical, the Decedent passed away. Id., pp. 18-19, ¶¶85-86.

18. Plaintiff now brings this suit alleging the Decedent's death by suicide was preventable and was the result of defendants' deliberate indifference and

failure to treat. (Id., p. 20).

19. Plaintiff claims that Defendants were required to reasonably respond to a strong likelihood that a prisoner would commit self harm. Id., p. 20, ¶90.

20. Plaintiff asserts that Defendants were aware of facts that would allow an inference that a substantial risk of serious harm and strong likelihood of self harm existed. Specifically, that the Decedent, had self harmed leading to a hospitalization, was on Self Harm Observation Status (SHOS), and had stated an intention to continue to self harm. Id., p. 20, ¶¶92-93.

21. Plaintiff alleges that despite this knowledge, Defendants "took no meaningful action to stop it." Id., p. 20, ¶93.

22. Plaintiff also alleges that "the misconduct described in this Count was undertaken intentionally, with malice, and/or reckless indifference" to the Decedent's rights and evinced deliberate indifference. Id., p. 21, ¶¶ 95, 97.

23. Additionally, Plaintiff alleges a failure to treat claim stating that Defendants knew that Decedent suffered from serious medical needs, yet they failed and intentionally refused to provide the necessary aid and treatment that would alleviate them. Id., p. 23, ¶108.

24. Finally, Defendants allegedly failed to remedy Decedent's self-harming behavior and acute blood loss, after having observed the Decedent reopen wounds that were previously sutured and while purportedly knowing that

these attempts resulted in low blood pressure.

## II. MEMORANDUM OF LAW

### STANDARD OF REVIEW FOR A MOTION TO DISMISS

Pursuant to Rule 8(a)(2), Fed. R. Civ. Pro., a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. "'[N]aked assertions' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Plausibility requires more than the possibility a defendant acted unlawfully. (Id.) To meet the plausibility standard, facts must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. Conclusory factual allegations, unwarranted deductions, claims that are internally inconsistent or can be disproven by facts of which the court can take judicial notice, and legal conclusions are not accepted as true for the purposes of a motion to dismiss. Ellen S. v. Fla. Bd. Of Bar Examiners, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (citations omitted).

Further, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. For Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). In the absence of a federal constitutional deprivation or violation of a federal right, Plaintiff cannot sustain a cause of action against Defendants. Moreover, the Eleventh Circuit '"requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).

## I. PLAINTIFF FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE TO A STRONG LIKELIHOOD OF SELF-HARM

Plaintiff's Complaint is due to be dismissed as Plaintiff has failed to plausibly allege that Defendants acted with subjective recklessness required to state a claim

under the Eighth Amendment. On the contrary, Plaintiff's own allegations demonstrate that Defendants repeatedly responded when the Decedent self-harmed, called for assistance, and provided transport to medical to be evaluated and treated. Thus, Plaintiff's allegations do not satisfy the standard.

Most recently the Eleventh Circuit sitting en banc held that to state a claim for deliberate indifference, a plaintiff must establish subjective recklessness as used in the criminal law. Wade v. McDade, 106 F.4th 1251, 1253, 1262 (11th Cir. 2024) (en banc). Specifically, a plaintiff is required to allege (a) an objectively serious deprivation, and that (b) the "defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." Ingram v. Florida Dep't of Corr., 829 F. Supp. 3d 1127, 1152 (S.D. Fla. 2026) (citing Wade v. McDade, 106 F.4th 1251, 1253 (11th Cir. 2024)). When deliberate indifference is alleged in cases involving a prison suicide, "the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." Turner v. Phillips, 547 F. Supp. 3d 1188, 1200 (N.D. Fla. 2021), aff'd, No. 21-12370, 2022 WL 458238 (11th Cir. Feb. 15, 2022) (citing Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003)) (citations omitted).

Section 1983 does not permit liability merely because a defendant was present during events that culminated in an injury or because others allegedly failed to respond adequately. It is well established that a prison official that responds

reasonably to a known risk cannot be held liable under the Eighth Amendment merely because the response ultimately failed to prevent harm. Farmer v. Brennan, 511 U.S. 825, 844-845 (1994).

In this case, even assuming Defendants knew the Decedent presented a strong likelihood of continued self-harm, knowledge of the underlying risk alone cannot be used to establish deliberate indifference after Wade was decided. Plaintiff must allege that each of the Defendants subjectively knew that his or her own conduct placed the Decedent at substantial risk **and consciously disregarded that risk.**

Plaintiff's allegations claim the opposite. Plaintiff alleges Defendant Boatwright discovered the Decedent after the first incident while performing her security checks. When she saw the Decedent was covered in blood, she immediately radioed for assistance. Doc. 1, ¶55. After visiting medical the Decedent was taken back to a confinement cell and during a subsequent security check, Boatwright discovered the Decedent had self-harmed and called for assistance. These are the only allegations against Defendant Boatwright, and both times, she observed the Decedent had self-harmed, called for help and the Decedent was taken to medical.

As to Defendant Monroe, Plaintiff alleges that she responded to Boatwright's first call for assistance, attempted to communicate with the Decedent, and then joined Boatwright in radioing for assistance. Following the second instance of self-harm, Defendant Monroe again responded to Boatwright's second call for assistance.

Later, after the Decedent's third incident of self-harm Defendant Monroe responded to the front of the cell, attempted to get a response, and when she didn't she radioed for assistance again.

Likewise, Defendant Trainer's alleged involvement was limited. Trainer responded to the Decedent's cell after the first instance of self-harm and provided transport to medical. Following Decedent's discharge from medical, Defendant Trainer escorted the Decedent back to a cell. When Decedent was found to have self-harmed a second time, Defendant Trainer returned and again transported the Decedent to medical at the direction of nursing personnel. Trainer was not involved nor present thereafter.

Taking Plaintiff's allegations as true, as required at this Motion to Dismiss stage, these allegations do not support Plaintiff's conclusory assertion that these particular Defendants "took no meaningful action" in response to the risk. In fact, Plaintiff's pleaded facts actually demonstrate that each time Decedent's self-harm was discovered, attempts were made to communicate, assistance was called, and the Decedent was taken to medical. Defendants took the action that they could in their respective positions and roles and acted promptly and accordingly to get the Decedent medical attention. Defendant Boatwright conducted security checks and together with Defendant Monroe reported the self-harm immediately, and requested assistance. See Grochowski v. Clayton Cnty., 961 F.3d 1311, 1321 (11th Cir. 2020)

(explaining that the jail's practice of conducting hourly rounds was constitutionally adequate). Defendant Trainer was summoned and provided prompt transport to medical. Plaintiff does not allege that any of the Defendants had medical training, knowledge or were in any way experienced in providing medical care.

Thus, based on Plaintiff's own allegations and timeline, Defendants took all necessary actions to respond appropriately to the risk based on their position, job assignment, and knowledge limitations. Section 1983 requires individual culpability, and Plaintiff's facts do not support that these Defendants failed to act reasonably. They used the authority and knowledge they had when they (Monroe and Boatwright) observed that the Decedent had self-harmed and needed medical attention and called for help, which led to the Decedent's transport (Trainer) to medical for treatment. Therefore, Defendants cannot be found to have disregarded the risk, and Plaintiff's claim for deliberate indifference must fail and Plaintiff's claim against Defendants must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR AN EIGHTH AMENDMENT VIOLATION OF FAILURE TO TREAT AGAINST DEFENDANTS

Plaintiff also asserts a claim for failure to treat and this claim suffers from an even more fundamental defect as it applies to Defendants Boatwright, Monroe and Trainer. Plaintiff states that defendants "failed and intentionally refused to provide

the necessary aid and treatment" for the Decedent's self-harming behavior and acute blood loss. Furthermore, Plaintiff alleges that defendants knew of the Decedent's low blood pressure and nevertheless failed to ensure treatment for blood loss and hypotension.

The Eleventh Circuit has recognized that non-medical correctional officials generally are not constitutionally required to disregard the determinations and recommendations of trained medical personnel. Keith v. DeKalb County, 749 F. 3d 1034, 1050 (11th Cir. 2014). As such, it is important to note that Defendants are correctional officers employed by the Florida Department of Corrections as officers, not medical professionals and to require them to substitute their judgment over medical professionals would be improper.

Moreover, based on Plaintiff's own factual allegations concerning Defendants, Plaintiff's conclusory allegations are inconsistent with the factual assertions alleged. Plaintiff attributes the knowledge of medical personnel with that of the Defendants who are correctional officers without any professional medical training. Particularly, Defendants Boatwright and Monroe were aware that the Decedent has self-harmed but Plaintiff does not allege that they had any knowledge beyond the incidents. They did not travel to medical, they were not involved in medical treatment nor did they have the training to diagnose or treat the Decedent. Furthermore, Defendant Trainer was responsible for transport rather than treatment.

Defendant Trainer responded when called, and promptly transported the Decedent to medical for treatment for the self-harm incidents.

Plaintiff seems to contend that Defendants should have recognized that the treatment decisions being made by medical personnel were allegedly inadequate and should have independently insisted upon some different course of medical treatment. This contention is insufficient to establish the subjective criminal recklessness required under Wade, therefore Plaintiff's claim must be dismissed.

## III. ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants assert qualified immunity to not stand trial or be required to face the burden of litigation on the claims raised by Plaintiff. "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation." Dalrymple v. Reno, 334 F.3d 991, 994–95 (11th Cir. 2003) (citation omitted). There is no genuine dispute that Defendants were acting within their discretionary authority. The Complaint alleges that each of the Defendants were an FDC officer, performing institutional duties including security checks, responding to calls for assistance, maintaining custody, and transporting an inmate for medical evaluation. Accordingly, the burden shifts to Plaintiff to demonstrate that Defendants violated a constitutional right that was clearly established at the time of the alleged conduct.

Qualified immunity allows government officials to carry out their

discretionary duties without the fear of personal liability or harassing litigation, and protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir 2001)). It operates to protect officials from the sometimes hazy border between constitutional and unconstitutional conduct, and to ensure that before they are subject to suit, officials are on notice that their conduct is unlawful. Saucier v. Katz, 533 U.S. 194, 206 (2001). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular conduct." Id. at 205. "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." Crawford-El v. Britton, 523 U.S. 574, 588 (1998).

The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity. The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted). The court must also determine whether the constitutional violation was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151. However, the district court has discretion to determine in what order to address each part. Pearson v.

Callahan, 555 U.S. 223, 236 (2009). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right… [E]xisting precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003) (citation omitted).

In the event the court is not convinced that a constitutional violation did not occur, Defendants assert they are entitled to qualified immunity. The question before the court is not whether prisoners possess a clearly established right to protection from a known likelihood of suicide or to treatment for serious medical needs but rather whether Plaintiff has identified controlling authority that would have placed a reasonable correctional officer on notice that the conduct alleged, violated the Eighth Amendment. Specifically, whether performing required security checks, repeatedly summoning assistance when self-harm was discovered, repeatedly transporting an inmate to medical, and following the direction of medical personnel to discharge the patient, would pose a violation of the Eighth Amendment. Existing case law, states that these circumstances do not equate to a constitutional violation.

The Court in Keith explained that non-medical correctional officials are not constitutionally required to disregard the determinations and recommendations of trained medical personnel. 749 F. 3d at 1050. Considering Keith and Farmer, Plaintiff has not established that Defendants failed to respond reasonably, and thus has not established that Defendants are liable for an Eighth Amendment violation that would overcome their qualified immunity. Therefore, Defendants are entitled to qualified immunity and Plaintiff's claims must be dismissed.

## CONCLUSION

Plaintiff's Complaint describes the multiple attempts at self-harm the Decedent undertook; however, based on the allegations set forth, liability upon the Defendants cannot be assumed, nor supported by the facts. Therefore, Defendants request that this Honorable Court dismiss Plaintiff's Complaint and grant any other relief as deemed fit and proper.

Respectfully Submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Clarissa Jimenez
**CLARISSA JIMENEZ**
Florida Bar No. 1040920
Senior Assistant Attorney General
Clarissa.Jimenez@myfloridalegal.com

/s/ Anthony Dean Johnson
**ANTHONY DEAN JOHNSON**
Florida Bar. No. 12084
Office of the Florida Attorney General
The Capitol # PL-01
Tallahassee, FL 32399
Ph. (850) 414-3300
Anthony.Johnson@myfloridalegal.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Motion to Dismiss has been furnished via the Federal CM/ECF e-filing Portal to all counsel of record on this 17th day of August, 2026.

/s/ Clarissa Jimenez
Clarissa Jimenez, Esq.