**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STACIE LAVIANO, individually,
as Personal Representative of the
ESTATE OF TREY ALLYN CORNWELL,
and on behalf of the estate and survivors,

Plaintiff,

v. **CASE NO.:** 3:26-cv-03970-TKW-ZCB

CENTURION OF FLORIDA, LLC,
et al.,

Defendants.
_________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH SUPPORTING BRIEF**

Defendants, Centurion of Florida, LLC, ("Centurion"), Rebecca Price, LPN, Sheila Melvin, APRN, Daniel Winfree, RN, Jeremy Shiver, PsyD, Deone Johnson, LPN, Kristina Tichenor, RN, BH, and Steve Jones, LPN, (collectively, "Centurion Defendants"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss Plaintiff's Complaint (Doc. 1) for the failure to state a claim upon which relief can be granted, and in support thereof state:

1. Trey Cornwell ("Mx"[1]), was an inmate incarcerated within the Florida Department of Corrections housed at Santa Rosa Correctional Institution ("SRCI").[2]

---

[1] As outlined in the Complaint, Inmate Cornwell went by the name Michelle, using "they/them" pronouns and the honorific "Mx."

[2] https://pubapps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=R74291&TypeSearch=IR (last accessed 8/10/26).

2. Plaintiff, Stacie Laviano, on behalf of Mx, filed this action against Defendants, amongst others, on May 29, 2026. (Doc. 1).

3. Centurion of Florida, LLC, is a distinct entity contracted with the Florida Department of Corrections ("FDC") to provide contractually required medical care and treatment to inmates at contractually specified institutions, including SRCI.

4. Defendant Price was a licensed practical nurse at SRCI.

5. Defendant Melvin was an Advanced Practice Registered Nurse at SRCI.

6. Defendant Winfree was a licensed registered nurse at SRCI.

7. Defendant Shiver was a licensed psychologist at SRCI.

8. Defendant Johnson was a licensed practical nurse at SRCI.

9. Defendant Tichenor was a licensed registered nurse and certified behavioral health provider at SRCI.

10. Defendant Jones was a licensed practical nurse at SRCI.

11. Plaintiff brings 42 U.S.C. § 1983 Eighth Amendment claims for deliberate indifference against Defendants arising from the death of Mx, by suicide. (*Id.*)

12. Upon review, Plaintiff's deliberate indifference claims are due to be dismissed for failing to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa Cnty.*, Fla., 21 F. 3d 1531, 1534 (11th Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than unadorned, conclusory accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain enough facts to make a claim for relief "plausible on its face." *Resnick v. AvMed, Inc.*, 693 F. 3d 1317, 1324–25 (11th Cir. 2012). A claim is "plausible" when the plaintiff pleads factual content allowing the Court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing whether a "plausible" claim is alleged, the Court must accept as true all of the allegations. *Id.* But this tenet is "inapplicable to legal conclusions," which "must be supported by factual allegations." *Id.* Complaints must also give defendants "fair notice" of the relief sought and the grounds on which the claims rest. *Liebman v. Deutsche Bank Nat'l Trust Co.,* 462 F. App'x 876, 878 (11th Cir. 2012) (citing *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)).

## ARGUMENT

### I. Plaintiff Fails to State A Constitutional Claim Against Defendants.

The Supreme Court has held that prison officials violate the bar on cruel and unusual punishments only when they display "deliberate indifference to serious medical needs of prisoners." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. *See Hoffer v. Sec'y, Fla. Dep't of Corr.,* 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1)

had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); *see also Wade v. McDade*, 2024 WL 3354963, at *2 (11th Cir. July 10, 2024).

Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in *Farmer* and clarified that courts in this circuit should apply the "subjective recklessness standard" as used in criminal law. *See Id.* at *1; *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show first, that he suffered a deprivation that was, "objectively, 'sufficiently serious'" and second, that the defendant acted with "subjective recklessness as used in the criminal law." To demonstrate "recklessness as used in the criminal law" a plaintiff must show that the defendant was actually, subjectively aware that their own conduct caused a substantial risk of serious harm to the plaintiff and even if the defendant "actually knew of a substantial risk to inmate health or safety," they "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Farmer*, 511 U.S. at 834, 39, 44-45); *Wade,* 2024 WL 3354963, at *7.

Thus, "[a]s applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." *Swain v. Junior,* 961 F.3d 1276, 1285 (11th Cir. 2020). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("As we held in *Daniels,* the protections of the Due Process Clause, whether procedural or substantive, are just not

triggered by lack of due care by prison officials."). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting *Waldrop*, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

To establish deliberate indifference, "the defendant must: (1) have subjective knowledge of a risk of serious harm; (2) disregard the risk; and (3) display conduct beyond mere negligence. *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (citation omitted). "In other words, a plaintiff must demonstrate that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually disregarded that risk." *Id.* (citation omitted).

Here, Plaintiff's allegations do not rise to a claim for deliberate indifference under the 11th Circuit's stringent standard. Absent from the Complaint are any specific allegations that each of the Defendants' actions, independently, arise to the requisite subjective knowledge as to be considered "subjective recklessness as used in the criminal law." Additionally, Plaintiff's allegations fail to state a claim for municipal liability under

§ 1983 against Centurion as set forth below. Accordingly, Plaintiff's Eighth Amendment claims must be dismissed.

**a. Plaintiff Fails to State an Eighth Amendment Claim against Centurion.**

To begin, state agency entities, like Centurion, cannot be vicariously liable under § 1983 for the constitutional wrongs of its employees or agents. *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir 2004) (*citing Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978)); *Craig v. Floyd Cty., Ga.*, 643 F. 3d 1306, 1310 (11th Cir. 2011) ("When a private entity ... contracts with [the State] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and becomes the functional equivalent of the municipality under section 1983"). "It is only when the execution of the government's policy or custom inflicts the injury that a municipality may be held liable." *McDowell*, 392 F. 3d at 1289 (*citing City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis added). An entity does not incur § 1983 liability for injuries caused solely by its employees. *Id*. Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of governmental employee infer governmental culpability. *Id*. Instead, to impose § 1983 liability on a governmental entity, a plaintiff must prove not only that his constitutional rights were violated, but also that the entity has a custom or policy that constituted deliberate indifference to that constitutional right and that the policy or custom caused the violation. *Id*. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy. *Depew v.*

*City of St. Marys, Georgia*, 787 F. 2d 1496, 1499 (11th Cir. 1986). Likewise, allegations of unlawful customs, policies, and practices against separate legal entities is insufficient to establish unlawful customs, policies, and practices on a separate and different legal entity. (*Id*.)

In this instance, Plaintiff does not allege that Centurion had a custom or policy that constituted deliberate indifference to a constitutional right. Importantly, Plaintiff fails to cite to any official policy or procedure of Centurion that is allegedly "unconstitutional." Likewise, she fails to set forth any allegations that Centurion endorsed an alleged "unofficial" policy or custom of denying inmates mental health care or treatment or failing to provide adequate mental healthcare. Rather, Plaintiff repeatedly relies solely upon the isolated suicide of Mx, which is insufficient to sustain her § 1983 claim against Centurion.

Indeed, Plaintiff must demonstrate actual or constructive knowledge on the part of Centurion to impute *Monell* liability, such that the allegations demonstrate Centurion was either actually aware of a "widespread or persistent" unconstitutional custom/practice or that the unconstitutional behavior was so "obvious, flagrant, rampant, and of continued duration...." as to place Centurion on notice of the need to adopt or implement corrective policies. *Denno v. Sch. Bd. of Volusia County, Fla.,* 218 F.3d 1267, 1276 (11th Cir.2000).*Hartley v. Parnell,* 193 F. 3d 1263, 1269 (11th Cir.1999); *Craig v. Floyd County, GA,* 643 F.3d 1306, 1310 (11th Cir. 2011)(The custom must be such "a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."). To succeed, Plaintiff must also set forth allegations of prior similar incidents involving Centurion of Florida, LLC providers

as to give rise to a "persistent and widespread practice" of constitutional deprivations in "denying or delaying" mental healthcare. *Depew,* 787 F. 2d at 1499; *Mercado v. City of Orlando,* 407 F. 3d 1152, 1162 (11th Cir.2005); *Rogers v. Evans,* 792 F. 2d 1052, 1059 (11th Cir.1986).

Here, as stated, Plaintiff's Complaint does not support the existence of an alleged widespread and persistent practice of "similar violations" as to place Centurion on notice. Plaintiff relies solely upon the suicide of Mx to sustain her *Monell* claim, which is insufficient. *Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023)("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates" and "[m]erely citing one's own personal experience, without more, is insufficient to show a longstanding and widespread practice.")(citing *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1299 (11th Cir. 2023)(A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates); *Ross v. Correction Health Services*, 2023 WL 2475443 (S.D. Fla. March 13, 2023)("[A] "custom" that affects just one of the hundreds of inmates just isn't "persistent or wide-spread.")(citing *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cit. 2004) (cleaned up); *Jennings v. Stewart*, 461 F. Supp. 3d 1198, 1201 (N.D. Fla. 2020) (Winsor, J.)("Other than his own experience, Jennings offers only a broad and conclusory assertion that 'frequent and customary actions like those set forth herein' demonstrate a de facto policy. But there are no facts to support any inference that such an informal policy existed and that, if it did, it caused the claimed violations."(citing *Craig v. Floyd County, Ga*, 643 F.3d 1306, 1311 (11th Cir. 2011); *Mizell*

*v. Lee*, 829 F. Supp. 1338, 1342 (M.D. Ga. 1993) (Owens, C.J.) ("Merely alleging that the City failed to adequately respond to the allegations of one person is not sufficient to establish a policy based on custom or usage."); *Sanchez v. Jefferys*, 2023 WL 4236208 (N.D. IL June 28, 2023)(opining that Seventh Circuit has repeatedly rejected *Monell* claims based upon Plaintiff's own individuated experience without evidence of other constitutional violations.). Indeed, apart from Mx's own suicide, Plaintiff cites to no other similar prior inmate suicides at SRCI or any other Florida DOC prisons to support allegations of "widespread" deficiencies within the mental care rendered to suicidal inmates in Florida by Centurion of Florida, LLC. All providers of Centurion of Florida LLC, follow the policies and procedures of the Florida Department of Corrections. Plaintiff references alleged incidents involving inmates outside the state of Florida, including institutions in Missouri, Kansas, Arizona, and New Mexico. However, medical care at those institutions is rendered by separate and distinct legal entities with separate correctional policies and procedures that are not within the purview of Centurion of Florida, LLC or the FDC. Likewise, several of these cases as alleged deal with factually distinguishable circumstances that have no relevance to Plaintiff's allegations at hand. As such, reliance on these cases fails to impute § 1983 liability.

Finally, on causation, Plaintiff fails to allege that any policy or practice of Centurion was the moving force behind her alleged constitutional deprivation. Plaintiff contends Centurion "prioritizes profit over patients" yet none of her allegations support that any of the care rendered to Mx was impacted by costs or in furtherance of any "cost-cutting" policy. In fact, several of Plaintiff's alleged "cost-cutting" practices are contradicted by her

own allegations. For example, Plaintiff cursorily alleges Centurion "only hires nurses as opposed to professionals with a broader scope of practice" yet, Plaintiff alleges Mx received care from Defendant Melvin, an Advanced Practice Registered Nurse, Defendant Shriver, a medical doctor with a specialty in psychology, Defendant Tichenor, a licensed registered nurse and certified behavioral health practitioner, Joseph Kelley, a psychiatric specialized clinician, and TaNeal Walls, a certified mental health counselor. (Doc. 1 at ¶¶ 38, 40, 42, 57, 130). Similarly, Plaintiff contends Centurion has a policy that "discourages outside hospital transfers," yet Mx was referred and sent to an outside hospital in the days preceding their death. (*Id*. at ¶¶ 45, 46, 129). Thus, Plaintiff's allegations do not support that any of the care rendered to Mx was impacted by costs or that any decisions surrounding Mx's care were in furtherance of any "cost-cutting" policy, such they were the moving force behind Mx's suicide.

Accordingly, because Plaintiff fails to allege an official or unofficial unconstitutional custom or practice on the part of Centurion that as the moving force behind her constitutional deprivation, her *Monell* claim, Count IV, fails and must be dismissed.

**b. Plaintiff Fails to State Claim for Deliberate Indifference Against Defendants Price, Melvin, Winfree, Shiver, Johnson, Tichenor, and Jones.**

Further, the actions of the individual medical Defendants do not rise to subjective recklessness as used in criminal law. To state a claim under the Eighth Amendment, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F. 3d 1325, 1331 (11th Cir. 2008). Plaintiff fails to contend

that any Defendant knew of a substantial risk of serious harm to Mx, and specifically disregarded that risk.

Specifically, all Defendants are only alleged to have had contact with Mx on one or more brief occasions on either January 25 or 27, 2024, respectively. Dr. Shriver is alleged to have seen Mx once, on January 25, 2024, at which time he documented that he was "highly suspect" of her self-inflicted fingernail lacerations because they were "notably precise and clean." (Doc. 1 at ⁋ 40). Mx was then admitted to the infirmary and later transferred to the hospital, where they remained until January 27, 2024. (*Id*. at ⁋ 45, 47). On January 27. 2024, upon return from the hospital, Mx is alleged to have committed self-harm and was assessed by Nurse Tichenor with Nurses Price and Jones present, and Mx was cleared to go back to her cell, with instructions that they be evaluated every six hours. (*Id*. at ⁋⁋ 57, 61). Later that day, Plaintiff alleges that Mx was brought back to medical for self-harm where Nurse Johnson, Winfree, Price, and APRN Melvin cleansed and redressed their wounds and discharged Mx to return to their cell and Nurse Tichenor issued a staff referral for Mx to be seen by a mental health provider (*Id*. at ⁋⁋ 68, 70). Mx later allegedly engaged in further self-harm and was brought back to medical where Nurse Winfree addressed their wounds and another referral for mental health evaluation was placed. (*Id*. at ⁋⁋ 79, 81). Plaintiff then alleges that prior to release back to their cell, emergency medical services were initiated and Mx was pronounced dead less than hour later. (*Id*. at ⁋⁋ 85, 86). Plaintiff contends Defendants should have done more and taken different steps in the care and treatment of Mx.

Even accepting these allegations as true, they insinuate at most negligence, not deliberate indifference, as Plaintiff fails to allege "whether or how" each individual Defendant knew that Plaintiff required further assessment or care. *McCrimmon v. Centurion of Florida, LLC*, 2021 WL 424348 at *5, Case No. 3:20-cv-36-BJD-JRK, (M.D. Fla. Feb. 8, 2021)(dismissing counts against individual nurses where nursing defendants encountered the decedent one or more times and the allegations did not explain "whether or how they each knew" the decedent needed better or more care). Plaintiff alleges that each provider interacted with Mx on one or two isolated occasions. Plaintiff's allegations do not support that each provider, independently, had subjective knowledge of a risk of harm and Plaintiff cannot establish the "subjective knowledge" requirement by alleging that Defendants "*should* have known." Rather, the precedent is clear that actual knowledge on the part of the individual defendant of a serious medical need is required. *See Farmer v. Brennan*, 511 U.S. 825, 860 (1994) ("Petitioner's suggested 'should have known' standard is nothing but a negligence standard."); *see also Burnette v. Taylor*, 533 F. 3d 1325, 1331 (11th Cir. 2008) ("No liability arises under the Constitution for an official's failure to alleviate a significant risk that he *should* have perceived but did not . . . . As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference."); *McCrimmon* 2021 WL 424348 at *5; *Clark v. Tucker*, 2014 WL 68646 at *4 (M.D. Fla. Jan. 8, 2014)(allegations the nurses did not adequately monitor decedent's condition and did not request another trained doctor to examine decedent, despite the fact that decedent was getting progressively sicker over the three days before his admission to the infirmary may establish the nurses' negligence, but

they are insufficient to establish conduct that is more than gross negligence, even at the motion to dismiss stage.)

Nonetheless, even if such allegations were sufficient to allege each individual Defendant "actually knew of a substantial risk to inmate health or safety," they "cannot be found liable under the Cruel and Unusual Punishments Clause" if they "responded reasonably to the risk." *Farmer*, 511 U.S. at 834, 39, 44-45); *Wade,* 2024 WL 3354963, at *7. None of the medical defendants are alleged to have denied or intentionally delayed any care to Mx. Rather, each of the medical Defendants is alleged to have responded to Mx's self-harm attempts by addressing their wounds, ordering further monitoring, and/or submitting requests for Mx to be seen and evaluated by a higher level of mental health care. There are no allegations that Defendants intentionally disregarded Mx's self-harm injuries and their alleged "failure to alleviate a significant risk that [defendant] should have perceived but did not…. cannot… be condemned as the infliction of punishment'" *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

"It bears repeating that deliberate indifference is *not* a constitutionalized version of common-law negligence." *Swain*, 961 F.3d at 1288. To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that "the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence," *Goodman v. Kimbrough*, 718 F. 3d 1325, 1332 (11th Cir. 2013), and is in fact akin to "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 839–40; *see also id.* at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). Accepting Plaintiff's allegations as showing "a criminally

(and thus constitutionally) reckless mental state, 'the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not.'" *Swain*, 961 F. 3d at 1288(citing *Goodman*, 718 F. 3d at 1334).

While Mx's suicide is tragic, Plaintiff's allegations do not demonstrate individual behavior on the part of each Defendant equivalent to recklessness as used in criminal law such that each Defendant possessed the requisite knowledge that their actions, individually, posed a substantial risk of serious harm to Mx, causing their suicide. *Shaw*, 701 F. App'x at 893. Again, Plaintiff's allegations may arise to a claim for negligence, but they do not arise to indifference. *Rogers v. Evans,* 792 F. 2d 1052, 1058 (11th Cir. 1986); *Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel v. Doe,* 888 F. 2d 783, 787-88 (11th Cir. 1989) (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop v. Evans,* 871 F. 2d 1030, 1033 (11th Cir. 1989) (mere medical malpractice does not constitute deliberate indifference).

As such, Counts I, II, and III of the Complaint must also be dismissed.

## CONCLUSION

WHEREFORE, for the forgoing reasons, Defendants, Centurion of Florida, LLC, Rebecca Price, LPN, Sheila Melvin, APRN, Daniel Winfree, RN, Jeremy Shiver, MD, Deone Johnson, RN, Kristina Tichenor, RN, BH, and Steve Jones, LPN, respectfully request this Court enter an Order dismissing Plaintiff's Complaint with prejudice, together with any such further relief the Court deems just and proper.

**Local Rule 7.1(F) Certification**

This motion complies with Local Rule 7.1(F), in that the number of words in this document is 3928.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on **August 21, 2026**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will provide a notice of electronic filing to counsel of record.

/s/ *Rachel E. Eilers*

Ethen R. Shapiro (FBN 669881)
Rachel E. Eilers (FBN 1019587)
Hill Ward Henderson
P.O. Box 2231
Tampa, FL 33601-2231
(813)221-3900
(813)221-2900 – facsimile
Ethen.Shapiro@hwhlaw.com
Rachel.Eilers@hwhlaw.com
*Attorneys for Defendants Centurion of Florida, LLC, Rebecca Price, LPN, Sheila Melvin, APRN, Daniel Winfree, RN, Jeremy Shiver, PsyD, Deone Johnson, LPN, Kristina Tichenor, RN, BH, and Steve Jones, LPN.*